T.C. Memo. 2003-97

UNITED STATES TAX COURT

LISA B. WILLIAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12030-99.                    Filed April 8, 2003.

<u>James R. Walker</u>, for petitioner.

<u>Sara J. Barkley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax and penalties for the taxable years 1993, 1994, and 1995 as follows:

|       |            | Penalty      |
|-------|------------|--------------|
| Year  | Deficiency | Sec. 6662(a) |
| 1993  | $7,000     | $1,400       |
| 1994  | 10,437     | 2,087        |
| 1995  | 10,725     | 2,145        |

The controversy between the parties presents the following issues
for our consideration:  (1) Whether the amounts of $25,000,
$35,000, and $35,000, received from her employer for 1993, 1994,
and 1995, respectively, were gifts or income that petitioner
failed to report; (2) whether the period for assessment had
expired with respect to petitioner's 1993 and 1994 tax years at
the time of the mailing of the notice of deficiency; (3) whether
$1,300 received by petitioner's husband was wages or an early
distribution from a qualified pension plan; and (4) whether
petitioner is liable for an accuracy-related penalty for 1993,
1994, or 1995 under section 6662(a).[1]

## FINDINGS OF FACT[2]

Petitioner Lisa B. Williams[3] resided in Littleton, Colorado,
at the time her petition was filed.  After receiving training at
the University of Wisconsin, Health Sciences Center and during

---

[1] All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

[2] The parties' stipulation of facts is incorporated by this
reference.

[3] At the time of filing the petition, petitioner's surname
was Williams.  At the time of trial, petitioner's surname was
Bruehahn.

1985, petitioner began her career as a staff radiation therapist with Deland and Noell, a corporate entity with its place of business in Lafayette, Louisiana. The corporation, which provided treatment to cancer patients was owned and operated by Thomas Noell and Maitland Deland, two doctors, who were also husband and wife.

Petitioner was 21 when she began working on the staff of the corporation, and in 1991 she was promoted to a position as chief therapist. During 1993, petitioner was promoted to the position of corporate chief therapist. As the corporate chief therapist, petitioner supervised all of the corporation's radiation therapists. During 1991 through 1995, the corporation was in a period of expansion and opening cancer treatment centers in multiple geographical locations. Petitioner was instrumental in the successful expansion and operation of the radiation therapy aspect of the corporate business. Corporate management was grooming petitioner to become part of administration and management, rather than limiting her focus to clinical operations.

During her employment with the corporation, a personal friendship developed between petitioner and Dr. Maitland Deland, who was the president and a shareholder of the corporation. Dr. Deland and petitioner spent time together during and after work, and their relationship developed into a close and personal one.

Their families, including the children, were also involved in the personal relationship.

During the years in issue, Marvin K. Sullivan was the corporation's chief operating officer, and procedures were in place for evaluating employee compensation. Each department head would evaluate the employees under him and send his evaluations of them, along with salary and bonus recommendations to Mr. Sullivan. He would then meet with Drs. Deland and Noell to discuss salary and bonus adjustments for the corporation's employees. Mr. Sullivan personally supervised petitioner and evaluated her performance in the same manner as other employees of the corporation. Mr. Sullivan considered petitioner to be one of the "finest clinical therapists in the country". Mr. Sullivan evaluated petitioner's performance for 1993, 1994, and 1995, and he recommended the amounts of her bonuses for those years, which were approved by Drs. Deland and Noell.

Petitioner received the following annual salary and bonuses for 1989 through 1995:

| Year | Salary | Bonus | Total |
|------|--------|-------|-------|
| 1989 | $38,000.00 | $1,000 | $39,000.00 |
| 1990 | 41,800.00 | 1,750 | 43,550.00 |
| 1991 | 47,500.00 | 2,500 | 50,000.00 |
| 1992 | 51,100.00 | 11,000 | 62,100.00 |
| 1993 | 56,292.61 | 25,000 | 81,292.61 |
| 1994 | 59,242.70 | 35,000 | 94,242.70 |
| 1995 | 62,856.81 | 35,000 | 97,856.81 |

With respect to 1993, 1994, and 1995, petitioner received Forms W-2, Wage and Tax Statement, from the corporation that reflected

her base salary. The Forms W-2, however, did not include the amount of the bonus that she had received during the taxable year. Petitioner did not receive a separate Form W-2 or Form 1099 from the corporation with respect to the bonus amounts she received during 1993, 1994, or 1995. The corporation did not withhold income or employment taxes from petitioner's bonus checks. The corporation deducted petitioner's bonus checks as salary expense.

Petitioner received each year's bonus in the form of a single check, and she negotiated it by endorsement and depositing into her bank account. Two of the three checks contained the explanation on its face that it was being paid as a "bonus". In the process of employee evaluation, each employee discussed the salary adjustments and/or bonuses with an immediate supervisor and the bonus checks were provided in a sealed envelope, the contents of which was usually known only by Dr. Deland. Petitioner was not aware of the amount of any other employee's bonus for the 3 years in question.

Petitioner was married to Jeffrey W. Williams, and they filed joint Federal income tax returns for their 1993, 1994, and 1995 tax years. The joint Federal income tax return filed by petitioner and her husband for 1993 was prepared by a commercial return preparer. For 1994 and 1995, however, petitioner's husband prepared their joint Federal income tax returns.

Petitioner was aware that the bonuses were not included in the joint Federal income tax return filed for 1994 and 1995.

Mr. Sullivan received salary and bonuses in 1993, 1994, and 1995, as follows:

| Year | Salary | Bonus | Total |
|------|--------|-------|-------|
| 1993 | $92,379 | $75,000 | $167,379 |
| 1994 | 100,000 | 100,000 | 200,000 |
| 1995 | 100,000 | 125,000 | 225,000 |

In the same manner as petitioner, Mr. Sullivan was not issued Forms W-2 for the bonus amounts and he did not report his bonuses on his 1993, 1994, and 1995 income tax returns. Mr. Sullivan was criminally prosecuted with respect to his omissions of the bonuses and pleaded guilty to filing a false return for 1995. He was required to make restitution by paying income tax on the omitted bonuses for 1993, 1994, and 1995. Mr. Sullivan was not aware that petitioner's bonuses were not reflected on a Form W-2 or that there was no withholding for her 1993, 1994, or 1995 bonuses.

During 1996, the corporation's in-house counsel hired certified public accountants to examine or audit the corporation's books because of discrepancies on the corporation's Federal tax returns. The examination was conducted during January 1997, and, as a result, the corporation filed revised employment tax returns. In addition, revised Forms W-2 for 1993, 1994, and 1995 were prepared and issued only to two of the corporation's employees. The discrepancy discovered by the

accountants specifically concerned Mr. Sullivan's and petitioner's bonus checks that had been deducted by the corporation as salary, but had not been reported to the Government as such on Forms W-2. In addition, no withholding tax had been taken from petitioner's and Mr. Sullivan's bonuses.

Petitioner's friendship with Dr. Deland ended during 1996, after petitioner's sister, who also worked for the corporation, was dismissed from her position. Petitioner did not receive a bonus during and for the 1996 year, and she resigned from the employ of the corporation.

During the spring of 1997, the corporation sent petitioner Forms W-2c, Statement of Corrected Income and Tax Amounts, for 1993, 1994 and 1995, which reflected the bonuses (additional compensation) in the amounts of $25,000, $35,000, and $35,000, respectively. After receiving the Forms W-2c, petitioner did not amend her 1993, 1994, or 1995 income tax returns to report the increased amounts reflected on the Forms W-2c. During December 1997, petitioner was advised that she was under criminal investigation by the Internal Revenue Service. Ultimately, there was no prosecution of petitioner in connection with her tax matters.

During 1995, petitioner's husband received a $1,300 distribution from Mutual of America which was reflected on a Form 1099-R, Distributions From Pensions Annuities, Retirement or

Profit-Sharing Plans, IRAs, Insurance Contracts, etc., which is a form designated for distributions from pensions, annuities, retirement, or profit sharing and related plans, including individual retirement accounts. Withholding of $260 was taken from the $1,300 gross distribution by Mutual of America.

                                OPINION

The factual focus of this case concerns annual lump-sum payments to petitioner in the amounts of $25,000, $35,000, and $35,000 during 1993, 1994, and 1995, respectively. The amounts were not reported to respondent or petitioner on Forms W-2, and no withholding was effected by petitioner's employer. Key to petitioner's position is that the $25,000 and $35,000 payments were gifts from Dr. Deland, who, during those years, was a personal friend of petitioner. In that regard, "Gross income does not include the value of property acquired by gift". Sec. 102(a).

Section 102(c)(1), however, denies section 102 exclusion treatment for "any amount transferred by or for an employer to, or for the benefit of, an employee." The legislative history indicates that a gift made by an employer to an employee exclusively for personal reasons (such as a birthday present), if it is entirely unrelated to the employment relationship and reflects no anticipation of business benefit, can still qualify for section 102 exclusion treatment. See S. Rept. 99-313, at 49

(1986), 1986-3 C.B. (Vol. 3) 1, 49.  Clearly, the amounts received by petitioner do not fall within the narrow exception intended for purely personal reasons.  Accordingly, under section 102(c)(1), petitioner would not be entitled to treat the amounts received as excludable from gross income.

Furthermore, the record does not support a finding that Dr. Deland, based on detached and disinterested generosity and out of affection, respect, and admiration, intended to make gifts to petitioner.  Commissioner v. Duberstein, 363 U.S. 278, 285 (1960).  The facts in this case reflect that the amounts paid to petitioner were in exchange for her high-quality performance as an employee.  The amounts were paid as bonuses after evaluation of her performance by the corporation's chief operating officer and his recommendation of the bonus amounts.  The recommended amounts were approved by Dr. Deland, the person who petitioner alleges made the alleged gifts.

It is clear from this record that petitioner was a key employee and that the amount she received in each of the 3 years was earned and commensurate with the bonuses paid to other employees, including Mr. Sullivan.  Petitioner has placed much emphasis on the fact that Dr. Deland was a personal friend, and she contends that the friendship was the source of disinterested generosity to support a gift.  Dr. Deland's approval and payment of the amounts in question, however, were not out of

disinterested generosity. The bonuses were set by a third person and based on petitioner's quality performance and approved by Drs. Deland and Noell. The facts in this record do not support a finding that the payments to petitioner were intended as gifts. See also sec. 102(c); Leschke v. Commissioner, T.C. Memo. 2001-18. Accordingly, we hold that the $25,000, $35,000, and $35,000 payments of bonuses constituted gross income that petitioner failed to report.

Next, we address petitioner's claim that the normal 3-year period for assessment had expired prior to respondent's issuance of the notice of deficiency for the 1993 and 1994 tax years. There is agreement that the period for assessment under section 6501 was not extended by written consent of the parties. As of April 13, 1999, when respondent mailed the notice of deficiency to petitioner, more than 3 years had elapsed since the filing of petitioner's return for 1993 and 1994. Respondent, however, relies on section 6501(e), which provides for a 6-year period for assessment, if a taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return".

In that regard, respondent bears the burden of showing the 25-percent omission. We have already decided, based on the preponderance of the evidence, that the bonuses were includable in petitioner's gross income for 1993 and 1994. Petitioner and

Mr. Williams's joint 1993 and 1994 income tax returns reflect the reporting of gross income in the amounts of $65,520 and $96,228, respectively. There is no mention on those returns of the $25,000 or $35,000 payment received by petitioner from the corporation during 1993 or 1994. Twenty-five percent of the income reported for 1993 and 1994 is $16,380 and $24,057, respectively. Therefore, the $25,000 and $35,000 bonuses, which were includable in and omitted from gross income for 1993 and 1994, respectively, were in excess of 25 percent of the gross income reported for each year within the meaning of section 6501(e). Accordingly, we hold that the period for assessment had not expired for 1993 and 1994 on April 13, 1999, the date respondent mailed the notice of deficiency to petitioner and Mr. Williams.

The third issue presented for our consideration involves respondent's determination that, for 1995, petitioner and Mr. Williams had incorrectly reported as wages a premature withdrawal of $1,300 from a pension account that was subject to the 10-percent penalty under section 72(t). Respondent determined that the $1,300 should be removed from income in the wage category and included in income in the pension category. Those adjustments cancel each other out and do not result in an increase in the gross income of petitioner and Mr. Williams. Changing the category of the $1,300, however, resulted in a $130 (10-percent

penalty) increase in tax for the 1995 tax year.

Petitioner offered no evidence on this adjustment and makes no argument that would show that respondent's determination is in error. Accordingly, we hold that petitioner is liable for the $130 increase in tax and that respondent's reclassification of the $1,300 from wage to pension income is sustained.

Finally, we consider whether petitioner is liable for an accuracy-related penalty for failing to report the bonuses received during 1993, 1994, or 1995.[4] Respondent determined that section 6662(a) applies and that petitioner is liable for a 20-percent accuracy-related penalty on the portion of the underpayment represented by the failure of petitioner to report her bonuses for 1993, 1994, or 1995.

A taxpayer is negligent when he or she fails "'to do what [a] reasonable and ordinarily prudent person would do under the circumstances.'" Korshin v. Commissioner, 91 F.3d 670, 672 (4th Cir. 1996) (quoting Schrum v. Commissioner, 33 F.3d 426, 437 (4th Cir. 1994), affg. in part, vacating and remanding in part on another ground T.C. Memo. 1993-124), affg. T.C. Memo. 1995-46.

As pertinent here, "negligence" includes the failure to make a reasonable attempt to comply with the provisions of the

---

[4] As a result of the inclusion of the bonuses in income some purely mathematical adjustments resulted due to an increase in petitioner's adjusted gross income, which, in turn, caused a reduction in allowable itemized deductions.

Internal Revenue Code.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  A taxpayer may avoid the application of the accuracy-related penalty by proving that he or she acted with reasonable cause and in good faith.  See sec. 6664(c).  Whether a taxpayer acted with reasonable cause and in good faith is measured by examining the relevant facts and circumstances, and most importantly, the extent to which he or she attempted to assess the proper tax liability.  See Neely v. Commissioner, 85 T.C. 934 (1985); Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Although there were numerous employees in the corporation, only petitioner and Mr. Sullivan, the chief operating officer, did not have their bonuses reported on a Form W-2.  Deductions were claimed with respect to all of the bonuses paid by the corporation, including those paid to petitioner and Mr. Sullivan.  Petitioner has emphasized that she was a close personal friend of Dr. Deland, who made the ultimate decisions regarding bonuses, and petitioner has argued that the $25,000 and $35,000 payments were gifts from Dr. Deland.

For the 1993 tax year, petitioner and Mr. Williams's joint return was professionally prepared.  Petitioner contends that she did not pay much attention to her Form W-2 for 1993 and simply provided the documents received from various employers and payers to the return preparer.

For 1994 and 1995, however, Mr. Williams prepared the joint return, and petitioner admits that she was more careful with respect to the reporting documents, including the Forms W-2. She noticed that the $35,000 amounts had not been included in the Forms W-2. Petitioner testified that she had asked Mr. Sullivan about the absence of the bonus amounts from the Forms W-2, and she contends that he said that her Forms W-2 were correct. Mr. Sullivan, however, denies any such conversation. He remembers a conversation about loans that had been made for the purpose of paying Mr. Williams's college tuition and whether forgiveness of those loans was a taxable event for petitioner and Mr. Williams. On that point, petitioner contends that the loans were not forgiven, but that she and Mr. Williams had repaid them in full. Accordingly, the record is clouded as to any conversations between Mr. Sullivan and petitioner on the subject.

Petitioner was aware of the $25,000 and the two $35,000 bonus payments received from her employer during 1993, 1994, and 1995. She had discussions with Mr. Sullivan, who, as her immediate supervisor, rated her performance and recommended the bonus amounts to Drs. Deland and Noell. We note that petitioner's base salary in 1993, 1994, and 1995 was in a range of approximately $56,000 to $63,000. Considering the fact that her bonuses were nearly one-half or more than one-half of her annual salary, it is highly unlikely that she could have been

unaware or ignorant of the fact that the bonus amounts were not included in the amounts reflected in the Forms W-2.

Petitioner with respect to 1993 claims reliance on a commercial return preparer. Petitioner also claims that during 1994 and 1995 she inquired of Mr. Sullivan as to why her bonuses were not included on her Forms W-2 for those years. She contends that Mr. Sullivan advised her that the Form(s) W-2 was correct. In that regard, petitioner may not avoid her duty to report accurately by placing the responsibility on an agent. See United States v. Boyle, 469 U.S. 241, 250-251 (1985). More to the point here, petitioner did not provide the preparer with information about the payments from the corporation for the 1993 year, and the preparer did not provide petitioner with legal or tax advice. With respect to the 1994 and 1995 tax years, however, petitioner admitted that she was aware that the amounts were not included on the Forms W-2. Irrespective of any advice that she may have received from Mr. Sullivan, she was not entitled to rely on him with respect to her income tax obligations. Id.

Under those circumstances, petitioner's claim of reliance upon the preparer or Mr. Sullivan was not reasonable, and petitioner is liable for the 20-percent penalty under section 6662(a) with respect to any underpayment that may result from the failure to report the $25,000, $35,000, and $35,000 bonuses received during 1993, 1994, and 1995, respectively. Betson v.

<u>Commissioner</u>, 802 F.2d 365 (9th Cir. 1986), affg. in part and revg. in part on another ground T.C. Memo. 1984-264; <u>Indus. Valley Bank & Trust Co. v. Commissioner</u>, 66 T.C. 272 (1976).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>