T.C. Memo. 2008-73


UNITED STATES TAX COURT


FAITH J. LARSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3438-05.                    Filed March 26, 2008.


<u>A. Lavar Taylor</u>, for petitioner.

<u>Alan H. Cooper</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


KROUPA, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax for 2000 and 2001 of $10,196 and $64,746, respectively, and an $11,289.20 accuracy-related penalty

under section 6662(a)[1] for 2001. After concessions,[2] we must decide two issues. The first issue is whether petitioner should have included a $160,000 payment she received from her employer, Power Conversion, Inc. (PCI), in her taxable income for 2001. We hold that petitioner should have included this payment in her taxable income.[3] The second issue is whether petitioner is liable for the accuracy-related penalty under section 6662(a). We hold that she is.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in Washington at the time her petition was filed.

### Petitioner's Employment

The dispute here focuses upon whether the $160,000 petitioner received from PCI was a gift or taxable income. PCI employed approximately 60 people and manufactured electronic components, magnetic coil, and transformers used by other

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The parties have resolved all other issues raised in the deficiency notice and the petition.

[3]We note that the parties stipulated that petitioner would not be liable for self-employment tax if the Court determined that the payment was income.

electronics manufacturers.  Donald Hoiland[4] (Mr. Hoiland) was the owner of PCI during 2001.

Petitioner met Mr. Hoiland in 1998.  Mr. Hoiland hired petitioner as his executive assistant at PCI in July of 1999 at a $60,000 per annum salary.  Petitioner reported directly to Mr. Hoiland.  Mr. Hoiland was so impressed by petitioner's performance that he promoted her to vice president for operations and increased her salary by $30,000 after she had worked there a year.  As vice president, petitioner interacted with different departments and provided Mr. Hoiland with suggestions regarding PCI's operations.  Mr. Hoiland retired and promoted petitioner to president of PCI during December 2000.

The interactions between petitioner and Mr. Hoiland were typically professional.  Petitioner often spoke with Mr. Hoiland by phone as she drove to work.  The two had lunch together regularly before Mr. Hoiland retired.  Their relationship was never intimate.

Petitioner refused to sign employment contracts of more than 1 year because she was uncertain how long she would stay in Seattle.  Mr. Hoiland offered petitioner a $20,000 raise, a Jaguar automobile, and a condominium along with her promotion to president and to induce her to stay in Seattle, but she turned them down.

---

[4]Mr. Hoiland died in May 2004 at age 73.

The Payment

In January 2001, approximately 1 month after petitioner was promoted to the PCI presidency, she received a $160,000 payment from PCI. Petitioner opened a bank account for Bossart, an entity she created for her commercial photography business, in anticipation of her receipt of the $160,000 payment. Dave Skone (Mr. Skone), PCI's accountant, helped petitioner with the Bossart licensing and other paperwork. Petitioner deposited the $160,000 into Bossart's bank account, over which she had sole signatory authority.

Petitioner played a limited role in determining how she would receive the $160,000 payment. Her lawyer, Herman Pettegrove (Mr. Pettegrove), contacted Mr. Skone. Mr. Hoiland, Mr. Skone, and Mr. Pettegrove arranged the payment to her. Petitioner and Mr. Pettegrove allege that Mr. Skone characterized the payment as a gift. Neither Mr. Pettegrove nor petitioner asked PCI for documentation that the payment was a gift. PCI issued petitioner a Form 1099-MISC, Miscellaneous Income, reporting that it paid petitioner $160,000.

Petitioner and Mr. Hoiland discussed bonuses at Christmas time, a few weeks before PCI paid her the $160,000. It was petitioner's belief that no other employee of PCI received a bonus as large as $160,000.

## Decline in Petitioner's Employment Relationship With PCI

After retiring, Mr. Hoiland traveled extensively. While traveling, Mr. Hoiland called petitioner and threatened to fire her if she did not sleep with him when he returned. Petitioner feared that Mr. Hoiland, a recovering alcoholic, was drinking again, and she attributed his advances to a relapse. Petitioner called the personnel manager for PCI, who encouraged her to prepare and file a summary of her conversation with Mr. Hoiland. Mr. Hoiland apologized to petitioner when he returned from his vacation and explained that he had, indeed, been drinking.

Petitioner's relationship with Mr. Hoiland and PCI deteriorated rapidly after this exchange with Mr. Hoiland. Mr. Hoiland fired petitioner in September 2001. Petitioner informally asserted a claim against PCI for damages after PCI terminated her employment. Petitioner and PCI engaged in mediation to settle the claim. Petitioner, through her counsel, alleged that the $160,000 payment was a bonus during mediation. The mediation resulted in petitioner's receiving a $100,000 settlement, of which $25,000 was allocated to back wages and $75,000 to general damages, attorney's fees, and costs. Petitioner and PCI also waived all other claims against one another as part of their mediation agreement. The tax treatment of the mediation settlement is not in dispute.

Petitioner's Federal Income Tax Return

Petitioner timely filed a Federal income tax return for 2001, but she did not report the $160,000 payment. Mr. Pettegrove, who occasionally assisted petitioner in legal matters and in the preparation of her tax returns, prepared her 2001 Federal income tax return. Mr. Pettegrove is admitted to practice before the Tax Court.

Petitioner provided Mr. Pettegrove with the Form 1099-MISC that she received from PCI and her other tax documents. The Form 1099-MISC was in the total amount of $162,662.71, including the $160,000 payment and $2,662.71 for the value of a computer given to petitioner. Petitioner acknowledged receipt of the computer, but she and respondent agree that its value was $400.

Mr. Pettegrove asked for no corroboration or substantiation from petitioner or PCI to show that the $160,000 payment was a gift. Other than his conversations with PCI representatives and petitioner, Mr. Pettegrove made no independent determination of whether the $160,000 payment was a gift or a bonus.

Mr. Skone, PCI's accountant, helped petitioner prepare her State tax return. Petitioner reported the $160,000 payment in the category of "Services & Other Activities" on the State tax return. Petitioner paid the Washington State tax due with the return. Petitioner wrote "taxes" in the memo line of this check

and made her check payable to the Washington State Department of Revenue.

PCI did not deduct the $160,000 payment on its Federal income tax return for 2001. PCI issued petitioner a Form 1099-MISC for the $160,000 payment rather than a Form W-2, Wage and Tax Statement. PCI did not withhold tax on the $160,000 payment.

Respondent mailed a deficiency notice to petitioner treating the $160,000 payment as a bonus not a gift, as petitioner asserts. Petitioner filed a timely petition.

## OPINION

Petitioner did not report the $160,000 payment and contends that it was a gift. Respondent determined that the $160,000 payment was includable in petitioner's 2001 income and that petitioner is liable for an accuracy-related penalty. Petitioner contends that she is not liable for the accuracy-related penalty because she acted with reasonable cause and in good faith in reliance upon the advice of her lawyer and tax preparer. We address each issue in turn.

## Inclusion of the $160,000 Payment in Petitioner's Income[5]

We first consider whether petitioner should have included the $160,000 payment in income. Petitioner failed to include this amount in income on her return even though PCI issued her a

---

[5]Petitioner conceded that she bears the burden of proof on this issue. See Rule 142(a).

Form 1099-MISC showing the payment as income.  Respondent contends that this payment was not a gift and petitioner should have included it in income.  Petitioner claims this payment was a gift from PCI's owner, Mr. Hoiland, whom petitioner identified as a "close acquaintance".  Petitioner alleges that Mr. Hoiland's generosity stemmed from a romantic interest in her rather than her performance for PCI.

Gross income is income from whatever source derived unless otherwise excluded.  Sec. 61(a).  Gross income includes compensation from services.  Sec. 61(a)(1).  Gross income does not include the value of property acquired by gift.  Sec. 102(a).  Generally, amounts transferred by or for an employer to, or for the benefit of, an employee are includable in gross income.  Sec. 102(c)(1).  The legislative history underlying section 102(c) indicates that a payment from an employer to an employee solely for personal reasons can still be a gift if the payment is completely unrelated to the employment relationship and reflects no expectation of a business benefit.  Williams v. Commissioner, T.C. Memo. 2003-97 (citing S. Rept. 99-313, at 49 (1986), 1986-3 C.B. (Vol. 3) 1, 49), affd. 120 Fed. Appx. 289 (10th Cir. 2005); H. Rept. 99-426, at 106 n.5 (1985), 1986-3 C.B. (Vol. 2) 1, 106.

A gift must proceed from a detached and disinterested generosity, motivated by affection, respect, admiration, charity, or the like for income tax purposes.  Duberstein v. Commissioner,

363 U.S. 278, 285 (1960); Williams v. Commissioner, supra. The transferor's intention is the most critical consideration for this inquiry. Duberstein v. Commissioner, supra at 285. The transferor's own characterization of the payment, however, is not determinative. Id. at 285-286. There must be an objective inquiry as to whether the payment is really a gift. Id. Payments from an employer to an employee may still be income to the employee even when the two share a close friendship. Williams v. Commissioner, supra. Also, payments between an employer and an employee may be income when the employer provides neither a Form W-2 nor a Form 1099-MISC and fails to withhold tax on those payments. Leschke v. Commissioner, T.C. Memo. 2001-18. Nevertheless, a payment between an employer and an employee may be a gift when the relationship between the employer and the employee is personal and unrelated to work. Caglia v. Commissioner, T.C. Memo. 1989-143; Harrington v. Commissioner, T.C. Memo. 1958-194. The personal relationship may be indicated by after-work social interactions or activities such as gambling trips. See Caglia v. Commissioner, supra; Harrington v. Commissioner, supra.

Mr. Hoiland rewarded petitioner's performance as an officer and employee of PCI with promotions and raises. Mr. Hoiland arranged to give petitioner the $160,000 payment after she turned down a $20,000 raise and an offer of a home and an automobile.

The offers that preceded the $160,000 payment related to petitioner's role as an employee. Those offers were either to reward petitioner's performance or to induce her to remain in the Seattle area.

Although petitioner and Mr. Hoiland worked together and were close acquaintances, there was no romantic relationship between them. Petitioner did not travel with Mr. Hoiland, and their social relationship did not transcend their work relationship. Although Mr. Hoiland made one sexual advance, petitioner flatly rejected it. These facts suggest that the $160,000 payment was motivated by business exigencies and not by detached or disinterested generosity. See Duberstein v. Commissioner, supra at 285.

Considering the record as a whole, we find that petitioner's uncorroborated testimony that Mr. Hoiland had an unrequited romantic interest in her or that she was the only employee to receive a substantial payment at the end of the year is insufficient to support her contention that the payment was a gift. We are not required to accept the self-serving testimony of interested parties without persuasive evidence or corroboration. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Yang v. Commissioner, T.C. Memo. 2000-263.

PCI's issuance of a Form 1099-MISC reporting the $160,000 payment indicates that PCI did not intend this payment to be a

gift.[6]  Petitioner reported the $160,000 payment as income under the category "Services & Other Activities" on her State tax return and paid the State tax on the additional income.  Mr. Skone, the same accountant who purportedly advised Mr. Pettegrove that the payment was a gift, prepared that return.

Petitioner has failed to establish that the $160,000 payment was a gift.[7]  Accordingly, we hold that respondent's

---

[6]While petitioner and respondent had approximately 2 years from the time that the petition was filed to the start of trial, both failed to produce relevant information about PCI's tax returns that would have been helpful to the Court.  Although the parties stipulated that PCI did not deduct the payment in 2001, the parties did not present evidence regarding which accounting method PCI used.  A donor's characterization of his action, however, is not determinative of its tax treatment in the hands of the recipient.  Duberstein v. Commissioner, 363 U.S. 278, 286-288 (1960).

[7]Petitioner also inaptly argued that the duty of consistency doctrine precludes respondent from asserting that the $160,000 payment is income to petitioner.  Petitioner's argument is premised upon respondent's stipulation that the income to petitioner is either wage income or a gift and that it was not self-employment income.  Petitioner's counsel suggests that this is inconsistent with PCI's treatment of the payment because PCI did not pay employment taxes on that payment.  The duty of consistency doctrine estops a taxpayer from adopting a position in an open year that is inconsistent with a position that the taxpayer took during a different year after the period of limitations has expired for the earlier year.  Estate of Ashman v. Commissioner, 231 F.3d 541, 543 (9th Cir. 2000), affg. T.C. Memo. 1998-145.  Estoppel and the duty of consistency are to be applied against the Commissioner with the utmost caution and restraint, if at all, and only in compelling situations where the result otherwise would be unwarrantable or unconscionable.  Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977).  Petitioner's argument must fail as there is no inconsistent treatment or position asserted or taken by respondent.

determination that the $160,000 payment to petitioner was includable in income was not in error.

Whether Petitioner Is Liable for the Accuracy-Related Penalty

We next consider whether petitioner is liable for the accuracy-related penalty under section 6662(a). Respondent determined that petitioner was liable for the accuracy-related penalty for 2001 for $160,400 of unreported income, including the $160,000 payment and $400 for a computer PCI provided her. Petitioner argues that even if she is liable for income tax on the $160,000 payment, she is not liable for the penalty because she acted in good faith and with reasonable cause.

Respondent bears the burden of production under section 7491(c) and must come forward with sufficient evidence that it was appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Respondent determined that petitioner is liable for the accuracy-related penalty for negligence or disregard of rules or regulations and/or a substantial understatement of income tax under section 6662 for 2001.

A taxpayer may be liable for a 20-percent penalty on any underpayment of tax attributable to negligence or disregard of rules or regulations or a substantial understatement of tax. Sec. 6662(a) and (b). "Negligence" is any failure to make a reasonable attempt to comply with the provisions of the Internal

Revenue Code, and "disregard" means any careless, reckless or intentional disregard. Sec. 6662(c). An underpayment is not subject to the penalty for negligence or for disregard of rules and regulations to the extent that the taxpayer shows that the underpayment is due to reasonable cause or good faith. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also secs. 1.6662-3(a), 1.6664-4(a), Income Tax Regs. A substantial understatement of tax is an understatement that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

Without including the $160,400 in income, petitioner reported a tax due of $829, whereas respondent determined a tax due of $65,575 and a Federal income tax deficiency of $64,746. Petitioner understated her income tax for 2001 in an amount greater than $5,000 or 10 percent of the tax required to be shown on the return. Respondent has, therefore, met his burden of production with respect to petitioner's substantial understatement of income tax.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. Accordingly, we

next consider whether the taxpayer acted with reasonable cause and in good faith. Our consideration of this aspect is based on pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional. Sec. 1.6664-4(b)(1), Income Tax Regs. When a taxpayer relies on the professional judgment of a competent tax adviser and provides him or her with all relevant information, the taxpayer's behavior is consistent with ordinary business care and prudence. United States v. Boyle, 469 U.S. 241, 250-251 (1985).

To establish reasonable cause through reliance on the advice of a tax adviser, the taxpayer must meet a three-prong test, laid out by Neonatology Associates, P.A. v. Commissioner, supra at 99: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer relied in good faith on the adviser's judgment.

Petitioner bears the burden of proof with respect to the defenses to the accuracy-related penalty. See Higbee v. Commissioner, supra at 446-447. Petitioner has not established that she had reasonable cause and acted in good faith.

Petitioner claims that she relied on Mr. Hoiland and Mr. Skone's characterization of the payment. Petitioner presents no

credible evidence corroborating her testimony that this was indeed their characterization of the payment. She also presents no credible evidence that Mr. Hoiland or Mr. Skone was competent to advise her on the taxable nature of the payment she received. Petitioner's claims that Mr. Skone told her the payment was a gift are even harder to believe because Mr. Skone prepared her State tax return reporting the payment as income.

Petitioner also claims to have relied upon the advice of Mr. Pettegrove. This is dubious as he offered none. He relied on her characterization of the payment as a gift and made no further inquiry. Particularly troubling is the fact that he completely disregarded the Form 1099-MISC from PCI that petitioner provided to him.

After considering all of the facts and circumstances, we find that petitioner failed to establish that she had reasonable cause and acted in good faith with respect to the underpayment. Accordingly, we sustain respondent's determination that petitioner is liable for the accuracy-related penalty.

We have considered all the remaining arguments that the parties made and, to the extent not addressed, we find them to be irrelevant, moot, or meritless.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under Rule 155.