T.C. Memo. 2012-282

UNITED STATES TAX COURT

RP GOLF, LLC, SB GOLF, LLC, TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27873-08.                      Filed October 3, 2012.

<u>Lisa J. Hansen</u>, for petitioner.

<u>David L. Zoss</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  This case is before the Court on respondent's motion for

summary judgment filed under Rule 121.[1]  In a notice of final partnership

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*2]** administrative adjustment (FPAA) for 2003, respondent disallowed a $16,400,000 charitable contribution deduction on the partnership return of RP Golf, LLC (RP Golf).  The deduction was claimed for the donation of a conservation easement on a portion of real property owned by RP Golf's limited liability company, the National Golf Club of Kansas City (National Golf).[2]

At issue is whether RP Golf has satisfied the substantiation requirements of section 170(f)(8) with respect to the conservation easement contribution.  Respondent also claims that the conservation easement does not:  (1) protect a relatively natural habitat of fish, wildlife, or plants, or similar ecosystem under section 170(h)(4)(A)(ii), or (2) preserve open space pursuant to a clearly delineated Federal, State, or local governmental conservation policy under section 170(h)(4)(A)(iii)(II).  For the reasons stated herein, the Court will grant in part and deny in part respondent's motion in a separate order.

Background

The facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments.  At the time the petition was filed, RP

---

[2]RP Golf is National Golf's sole member.  Although identified as a Missouri corporation in the agreement, National Golf is a single-member limited liability company organized in Missouri and disregarded for Federal income tax purposes.

**[*3]** Golf's principal place of business was in Missouri. RP Golf is a Missouri limited liability company. SB Golf, LLC, is RP Golf's tax matters partner.

On December 29, 2003, National Golf executed an agreement entitled "Grant of Permanent Conservation Easement" (agreement) granting a conservation easement to the Platte County Land Trust, a Missouri not-for-profit corporation (PLT).[3] The property underlying the easement is in the City of Parkville, Platte County, Missouri, and covers about 277 acres. National Golf operates two private golf courses on the property.[4]

The agreement includes, inter alia, the following statements about the transfer of the conservation easement:

> WHEREAS, the Grantor is the owner in fee of certain real property located in Platte County, Missouri, which has aesthetic, open space, scenic, recreational, and natural resource values in its present state * * *

>    *       *       *       *       *       *       *

---

[3]PLT is a Missouri not-for-profit corporation qualified under sec. 501(c)(3) to receive charitable contributions described in sec. 170(c).

[4]The extensive legal description of the conservation easement is a 10-page metes and bounds survey with an additional 16 pages of survey describing exceptions to the conservation easement. Before RP Golf was organized in 1997, the property was a golf course formerly known as Windbrook Golf Club. In 2000 and 2002 RP Golf developed two private golf courses on the property.

[*4]        WHEREAS, Grantor desires to protect and preserve the natural values of the property by making permanent arrangements for the conservation of the open space, scenic natural resources, natural habitat and aesthetic qualities of the Property and to limit the future use thereof to such purposes * * *

        *        *        *        *        *        *        *

        NOW, THEREFORE, for and in consideration of the covenants and representations contained herein and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Grantor on behalf of itself and its heirs, successors and assigns, in consideration of the premises contained herein and other valuable consideration paid to its full satisfaction, does freely give, grant, sell, transfer, convey and confirm forever unto [PLT] * * * a perpetual conservation easement (as more particularly set forth below) in that certain tract of land containing approximately three hundred (300) acres, more or less, being more particularly described in Schedule A and illustrated on Schedule B attached hereto and incorporated herein * * *

        *        *        *        *        *        *        *

        This instrument sets forth the entire agreement of the parties with respect to the Easement and supersedes all prior discussions, negotiations, understandings, or agreements relating to the Easement, all of which are merged herein.

The easement's purpose, according to the agreement, is primarily to "further the policies of the State of Missouri designed to foster the preservation of open space or open areas, conservation of the state's forest, soil, water, plant and wildlife habitats, and other natural and scenic resources" and "to implement the objectives set forth in 67.870 to 67.910 R.S.M.O."  The objectives outlined in the

[*5] Missouri statutes aim to preserve and maintain open areas and spaces in the light of encroaching urban and metropolitan development. Mo. Ann. Stat. sec. 67.870 (West 2007).

Missouri law governs the interpretation and performance of the easement, which, per the agreement, shall be liberally construed to implement Missouri's open areas policy. To ensure National Golf's compliance with the statutory objectives and agreement terms, PLT agreed to inspect and, if necessary, enforce the easement for an annual fee of about $15,000.

By signing a separate attachment to the agreement entitled "Acceptance", PLT's vice president accepted the easement and agreed to its covenants and restrictions. The agreement was recorded in the Office of the Platte County Recorder on December 30, 2003.

On its timely filed Federal income tax return for 2003, RP Golf claimed a charitable contribution deduction of $16,400,000 and attached to the return a Form 8283, Noncash Charitable Contributions. On the Form 8283 RP Golf reported the easement's value and basis information and included an appraiser's declaration stating that the easement's appraised fair market value was $16,400,000.[5] RP Golf

_____

[5]According to the supplemental information attached to Form 8283 the fair market value of the property before the easement was $17,400,000 and the fair market value after the easement was $1 million.

**[\*6]** did not complete the column entitled "For bargain sales, enter amount received". PLT's vice president signed the form under "Donee Acknowledgment" attesting to PLT's status as a qualified organization under section 170(c) and its receipt of the easement on December 29, 2003.

In a letter dated April 10, 2008, PLT thanked RP Golf and National Golf for the easement. PLT also included a statement that it did not provide any goods or services in exchange for the easement.

On August 22, 2008, respondent's Appeals Office sent petitioner, as tax matters partner, an FPAA disallowing RP Golf's charitable contribution deduction for the easement. Petitioner timely filed a petition with the Court.

## Discussion

The Court may grant summary judgment if there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Respondent, as the moving party, has the burden of proving that no genuine dispute as to any material fact exists and that a decision may be rendered as a matter of law. See Rule 121(b). Petitioner, as the nonmoving party, cannot rest upon the allegations or denials in its pleading but must "set forth specific facts showing that there is a genuine dispute for trial." See Rule 121(d);

**[\*7]** <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 820-821 (1985). In deciding whether to grant summary judgment, the Court must view all factual inferences in favor of the nonmoving party. <u>See</u> Rule 121(d); <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 115 T.C. 554, 559 (2000).

I. <u>Contemporaneous Written Acknowledgment</u>

Section 170(f)(8) provides that no deduction shall be allowed for charitable contributions of $250 or more unless the contribution is substantiated with a contemporaneous written acknowledgment from the donee organization. Sec. 170(f)(8)(A). The contemporaneous written acknowledgment "'need not take any particular form'", <u>see</u> <u>Schrimsher v. Commissioner</u>, T.C. Memo. 2011-71 (quoting H.R. Conf. Rept. No. 103-213, at 565 n.32 (1993), 1993-3 C.B. 393, 443), but it must meet the requirements of section 170(f)(8)(B). The doctrine of substantial compliance does not apply to excuse compliance with the substantiation requirements of section 170(f)(8)(B). <u>Averyt v. Commissioner</u>, T.C. Memo. 2012-198; <u>Durden v. Commissioner</u>, T.C. Memo. 2012-140.

Section 170(f)(8)(B) provides that a contemporaneous written acknowledgment must include the following information:

> (i) The amount of cash and a description (but not value) of any property other than cash contributed.

**[*8]**          (ii)  Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).

          (iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) * * *

A written acknowledgment is contemporaneous if the taxpayer obtains the acknowledgment on or before the earlier of the date the return was filed or the due date (including extensions) of the return.  See sec. 170(f)(8)(C).  The parties do not dispute that a written acknowledgment must be contemporaneous.[6]

Petitioner claims that the agreement is a written acknowledgment that complies with the requirements of section 170(f)(8).  Respondent disagrees.  Respondent argues that the agreement is not an acknowledgment under section 170(f)(8) because it lacks a statement that no goods or services were exchanged for the easement.  See sec. 170(f)(8)(B)(ii).  Neither party alleges that PLT provided goods or services to National Golf in exchange for the easement.

The Court has held that conservation deeds such as the agreement may satisfy the substantiation requirements of section 170(f)(8).  See, e.g., Averyt v.

---

[6]The parties agree that the agreement and the Form 8283 are contemporaneous under sec. 170(f)(8), unlike PLT's April 10, 2008, letter.  Although the parties dispute whether the Form 8283 is a contemporaneous written acknowledgment, the Court need not address the form at this time because the agreement suffices for sec. 170(f)(8) substantiation purposes.

[*9] Commissioner, T.C. Memo. 2012-198; Simmons v. Commissioner, T.C. Memo. 2009-208, aff'd, 646 F.3d 6 (D.C. Cir. 2011). In Simmons, the Court held that the conservation easement deeds satisfied the requirements of section 170(f)(8)(A) and (B) because they were signed by the representatives of the charity, were contemporaneous with the donation of the easements, and described the properties donated. Similarly, the agreement in this case was signed by a representative of PLT, was contemporaneous with the donation of the easement, and provided a detailed description of the property and the easement. The Court in Simmons did not, however, address the requirement that the written acknowledgment state whether the donee organization provided any goods or services. This requirement was addressed recently in Averyt.

In Averyt the Court considered whether the taxpayers satisfied the substantiation requirements of section 170(f)(8) for the contribution of a conservation easement conveyed through their limited liability company. Following Simmons, the Court concluded that the conservation deed transferring the easement was a contemporaneous written acknowledgment under section 170(f)(8) because it was signed by a representative of the charity, provided a detailed description of the property and the conservation easement, and was contemporaneous with the contribution. Moreover, the Court determined that the

**[\*10]** conservation deed met the requirement of section 170(f)(8)(B)(ii).  The

conservation deed stated that the conservation easement was an unconditional gift,

recited no consideration received in exchange for it, and stipulated that it constituted

the entire agreement between the parties with respect to the contribution of the

conservation easement.  Thus, the conservation deed, taken as a whole, stated that

no goods or services were received in exchange for the contribution.

The agreement in this case states that the easement contribution is made "in

consideration of the covenants and representations contained herein and for other

good and valuable consideration".  The agreement then describes the property's

conservation value as its aesthetic, open space, scenic, recreational, and natural

resource values but does not include consideration of any value other than the

preservation of the property.[7]  Finally, the agreement states that it constitutes the

_____

[7]Despite the veiled reference to "other good and valuable consideration",
neither party alleges that goods or services were exchanged for the easement
contribution.  In fact, the agreement indicates to the contrary--that there was no
consideration exchanged.  The most obvious indication is that the agreement does
not recite any amount of consideration.  Cf. Schrimsher v. Commissioner, T.C.
Memo. 2011-71 (the deed conveying a conservation easement recited as
consideration "the sum of TEN DOLLARS, plus other good and valuable
consideration").  The absence of any statement regarding consideration is
underscored by the agreement recitals, which state that the easement is "freely"
given.  Therefore, the Court concludes that the "other good and valuable

(continued...)

**[\*11]** entire agreement between the parties regarding the contribution of the conservation easement. The Court therefore holds that the agreement, taken as a whole, states that no goods or services were received in exchange for the contribution. Accordingly, the agreement satisfies the substantiation requirements of section 170(f)(8), and respondent's motion for summary judgment on this issue will be denied.

II. Clearly Delineated Government Conservation Policy

A taxpayer generally may not claim a charitable contribution deduction for the gift of a partial interest in any type of either real or personal property. Sec. 170(f)(3)(A). However, there is an exception for a "qualified conservation contribution", which requires, among other things, a contribution exclusively for conservation purposes. Sec. 170(f)(3)(B)(iii), (h)(1). The term "conservation purpose" is defined in section 170(h)(4)(A) to include, among other things, the preservation of open space where such preservation is pursuant to a clearly delineated Federal, State, or local governmental conservation policy. Sec. 170(h)(4)(A)(iii)(II).

---

[7](...continued)
consideration" recited in the agreement is boilerplate language and has no legal effect for purposes of sec. 170(f)(8).

**[\*12]** The Missouri conservation policy cited in the agreement is limited to open spaces and areas within counties having a population of more than 200,000 residents or in any county adjoining, or city not within but adjoining such county. Mo. Ann. Stat. sec. 67.870. There is no evidence that on the date of the grant Platte County had a population that exceeded 200,000 residents; nor is there evidence that the county adjacent to Platte County had a population that exceeded 200,000 residents.

In light of the foregoing, petitioner, in its response in opposition to respondent's motion for summary judgment, conceded that the easement was not made pursuant to a clearly delineated governmental conservation policy within the meaning of section 170(h)(4)(A)(iii)(II). Therefore, the easement's conservation purpose, as defined in section 170(h)(4), must hinge on a purpose other than a clearly delineated government conservation policy. Accordingly, the Court will grant respondent's motion for summary judgment on this issue.

The Court finds that material facts regarding the easement preservation of a natural habitat within the meaning of section 170(h)(4)(A)(ii) continue to be in dispute. The Court will therefore deny respondent's motion for summary judgment on this issue.

**[\*13]** The Court has considered the parties' remaining arguments and, to the extent not discussed above, concludes that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.