T.C. Memo. 2017-166

UNITED STATES TAX COURT

BIG RIVER DEVELOPMENT, L.P., CORK FACTORY LP,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16767-14.                    Filed August 28, 2017.

Jeffrey H. Paravano, Jeffry J. Erney, Kevin M. Johnson, Jay R. Nanavati, and Michelle M. Hervey, for petitioner.

Keith Lawrence Gorman and Philip S. Yarberough, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: This case involves a charitable contribution deduction claimed by Big River Development, L.P. (LP), for a conservation easement. Currently before the Court are cross-motions for partial summary judgment as to

**[\*2]** whether LP satisfied the substantiation requirements in section 170(f)(8) for this donation.[1] LP did not receive from the donee organization a timely letter of the sort that normally acts as a "contemporaneous written acknowledgment" (CWA) within the meaning of section 170(f)(8)(B). Petitioner contends that LP nevertheless satisfied the statutory substantiation requirements because the deed of easement constituted a de facto CWA.

We have previously held that a deed of easement may constitute a CWA. See 310 Retail, LLC v. Commissioner, T.C. Memo. 2017-164; RP Golf, LLC v. Commissioner, T.C. Memo. 2012-282, 104 T.C.M. (CCH) 413; Averyt v. Commissioner, T.C. Memo. 2012-198, 104 T.C.M. (CCH) 65. We conclude that the deed of easement in this case qualifies as a CWA under the logic of these cases. We will accordingly grant petitioner's motion for partial summary judgment and deny respondent's cross-motion for partial summary judgment.

Background

There is no dispute as to the following facts, which are drawn from the parties' summary judgment motion papers and the attached exhibits. When the petition was filed LP had its principal place of business in Illinois.

---

[1] All statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] Sometime before 2006 LP acquired a property at 23d and Railroad Streets in Pittsburgh, Pennsylvania. The property includes the Armstrong Cork Factory (building), which was built in 1901-1902. In 2005 LP began renovating the building into a luxury apartment complex known as the Cork Factory Lofts.

On January 12, 2005, LP executed a deed of historic preservation and conservation easement (deed of easement) granting the Pittsburgh History and Landmarks Foundation (PHLF) an easement over the facade of the building. PHLF is an organization described in section 501(c)(3) and is a "qualified organization" under section 170(h)(3). PHLF caused the deed to be recorded in the Allegheny County Department of Real Estate in January 2005.

The granting provision of the deed of easement stated as follows:

NOW THEREFORE, in consideration of Ten Dollars ($10.00), the mutual promises hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, * * * [LP] and * * * [PHLF], intending to be legally bound hereby, agree as follows:

* * * * * * *

* * * [LP] hereby grants and donates to * * * [PHLF], pursuant to section 170(h) of the Code * * * and * * * [PHLF] hereby accepts from [LP], the Easement in gross and in perpetuity over and across the Easement Area.

[*4]   The deed of easement recited that "the obligations imposed by this Deed shall be effective in perpetuity and shall be deemed to run as a binding servitude with the Property."  It stated that PHLF would monitor LP's compliance with the easement restrictions and authorized PHLF to inspect the premises to ensure compliance.  In order to help defray the costs that PHLF expected to incur in performing such monitoring, the deed provided as follows in a provision captioned "Fees":

> In further consideration for the benefits to be received by * * * [LP] as a result of the granting of the Easement and the entering into of this Deed, * * * [LP] covenants and agrees to pay * * * [PHLF] a one-time donation fee of $93,500, which will be used to endow periodic easement monitoring and related costs and support a * * * [PHLF] preservation easement defense fund.  Such fee shall be due and payable at closing prior to the recording of this Deed.

In the event PHLF's periodic monitoring should disclose a violation of the easement restrictions, the deed of easement entitled PHLF "to enjoin any violation * * * by temporary, preliminary, and or permanent injunction."  Such legal action would be designed to bring about "the restoration of the Easement Area and the condition and appearance of same that existed prior to the violation complained of."  In that event LP would be required to reimburse PHLF "for any costs incurred in connection with * * * [its] enforcement of the terms of this Deed, including all reasonable court costs and attorney's, architectural, engineering, and expert witness fees."

[*5] Apart from PHLF's monitoring activities and LP's related fee payment, the deed of easement contained no reference to any valuable goods or services being furnished to LP and recited no receipt by PHLF of any consideration for providing goods or services. The parties stated their understanding that "[t]his Deed reflects the entire agreement of * * * [LP] and * * * [PHLF]. Any prior or simultaneous correspondence, understandings, agreements, and representations are null and void upon execution hereof, unless set out in this instrument."

LP secured an appraisal in November 2004 that determined a value of $7.14 million for the facade easement. LP timely filed for 2005 a Form 1065, U.S. Return of Partnership Income, claiming a $7.14 million charitable contribution deduction. LP attached to its return Form 8283, Noncash Charitable Contributions, executed by the appraiser and by PHLF's president. This document contained no statement as to whether PHLF had provided any goods or services to LP in exchange for its gift.

On March 1, 2007, more than two years after the gift was made, PHLF supplied LP with a letter stating that PHLF "did not provide any goods or services in exchange for your contribution of these conservation easements, aside from monitoring services for which * * * [PHLF] was separately compensated." The letter

**[\*6]** reminded LP that PHLF would inspect the property "no less than annually to be certain that the terms of the easement continue to be fulfilled."

The Internal Revenue Service (IRS or respondent) selected LP's 2005 return for examination. In April 2009 the IRS sent LP a summary report explaining that it proposed to disallow the claimed charitable contribution deduction for the facade easement. On April 26, 2014, the IRS issued LP a notice of final partnership administrative adjustment (FPAA) disallowing that claimed deduction for failure to satisfy the requirements in section 170. Alternatively, the FPAA determined that, if any deduction were allowable, LP had not established the fair market value of the facade easement. The FPAA also determined a 40% "gross valuation misstatement" penalty under section 6662(a) and (h) or, in the alternative, a 20% accuracy-related penalty under section 6662(a). In September 2014 petitioner timely petitioned this Court for readjustment of the partnership items under section 6226.[2]

---

[2]During the IRS examination PHLF submitted an amended Form 990, Return of Organization Exempt From Income Tax, for 2005, in which it disclosed the easement and stated that no goods or services (apart from the separately compensated monitoring activities) had been provided to LP in exchange for its gift. After LP's petition was filed, PHLF filed a Form 990 for 2013 in which it repeated these statements. Citing section 170(f)(8)(D), petitioner initially contended that the donee's filing of these tax returns relieved LP of the obligation to secure a CWA. We rejected essentially the same argument in 15 W. 17th St., LLC v. Commissioner, 147 T.C. __ (Dec. 22, 2016), and we reject it again here. We discuss this

(continued...)

**[\*7]**                                     <u>Discussion</u>

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  <u>See</u> <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74 (2001).  We may grant partial summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  Rule 121(b); <u>Elec. Arts, Inc. v. Commissioner</u>, 118 T.C. 226, 238 (2002).  The parties agree on all questions of material fact and have expressed that consensus by filing cross-motions for partial summary judgment.  We conclude that the question presented is appropriate for summary adjudication.

A.     <u>Statutory and Regulatory Framework</u>

Section 170(a)(1) allows a deduction for charitable contributions made during the taxable year.  Generally, the amount of the deduction is the value of the property contributed, reduced by the value of any consideration that the taxpayer receives in exchange for the gift.  <u>Addis v. Commissioner</u>, 118 T.C. 528, 536 (2002), <u>aff'd</u>, 374 F.3d 881 (9th Cir. 2004).  Payments to a charity that are "made partly as a contribution and partly in consideration for goods or services provided to the donor by the donee" are often called "quid pro quo contributions."  <u>Ibid.</u>

---

²(...continued)
point more fully in <u>310 Retail, LLC v. Commissioner</u>, T.C. Memo. 2017-164, at *10-*11.

**[\*8]**   To address tax-compliance problems that had arisen in connection with quid pro quo contributions, Congress in 1993 enacted section 170(f)(8), captioned "Substantiation requirement for certain contributions."  Congress enacted this provision "to require charitable organizations that receive quid pro quo contributions * * * to inform their donors that the deduction under section 170 is limited to the amount by which the payment exceeds the value of goods or services provided by the charity."  Addis, 118 T.C. at 536.  Section 170(f)(8) is "a compliance provision designed to foster disclosure of 'dual payment' or quid pro quo contributions."  Viralam v. Commissioner, 136 T.C. 151, 171 (2011).

Section 170(f)(8)(A) provides:  "No deduction shall be allowed * * * for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B)."  A CWA need not take any particular form and may be furnished to the donor (for example) by letter, postcard, or computer-generated media.  French v. Commissioner, T.C. Memo. 2016-53, 111 T.C.M. (CCH) 1241, 1242; Schrimsher v. Commissioner, T.C. Memo. 2011-71, 101 T.C.M. (CCH) 1329, 1330 (citing legislative history).

The requirement that a CWA be obtained for charitable contributions of $250 or more is a strict one.  In the absence of a CWA meeting the statute's de-

**[*9]** mands, "[n]o deduction shall be allowed." Sec. 170(f)(8)(A); see French, 111 T.C.M. (CCH) at 1242 ("If a taxpayer fails to meet the strict substantiation requirements of section 170(f)(8), the entire deduction is disallowed."). "The doctrine of substantial compliance does not apply to excuse failure to obtain a CWA meeting the statutory requirements." 15 W. 17th St., LLC, 147 T.C. __, __ (slip op. at 10) (Dec. 22, 2016); see French, 111 T.C.M. (CCH) at 1242; Durden v. Commissioner, T.C. Memo. 2012-140, 103 T.C.M. (CCH) 1762, 1763-1764. "The deterrence value of section 170(f)(8)'s total denial of a deduction comports with the effective administration of a self-assessment and self-reporting system." Addis, 374 F.3d at 887.

Section 170(f)(8)(B) provides that a CWA must include the following information:

> (i) The amount of cash and a description (but not value) of any property other than cash contributed.

> (ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).

> (iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) * * *.

An acknowledgment qualifies as "contemporaneous" only if the donee provides it to the taxpayer on or before the earlier of "the date on which the taxpayer files a

**[\*10]** return for the taxable year in which the contribution was made" or "the due date (including extensions) for filing such return." Sec. 170(f)(8)(C)(i) and (ii).

B.    Analysis

LP did not receive from PHLF a CWA of the sort that charities typically furnish to their donors. The Form 8283 executed by PHLF's president was contemporaneous, but it did not include a statement as to whether PHLF had provided any goods or services in exchange for LP's gift. The letter that PHLF supplied in March 2007 included the latter statement, but it was not "contemporaneous" because it postdated the facade easement by more than two years.

Petitioner nevertheless contends that LP did receive a CWA and that the deed of easement constituted that CWA. In 310 Retail, LLC, T.C. Memo. 2017-164, at \*11-\*16, we reviewed our case law addressing this subject. We concluded that the deed of easement there, like the deeds of easement in Averyt and RP Golf, LLC, qualified as a CWA because it included an affirmative indication that the donee organization had supplied no goods or services to the taxpayer in exchange for its gift. Id. at \*16-\*17.

With one exception discussed below, the deed of easement involved here resembles in material respects the deeds of easement involved in 310 Retail, LLC, and RP Golf, LLC. The deed of easement in this case was properly executed by

[*11] PHLF's president and recorded in the Allegheny County Department of Real Estate in January 2005.  It thus constituted a "contemporaneous" acknowledgment.  See sec. 170(f)(8)(C).

This acknowledgment included an affirmative indication that PHLF supplied no goods or services to LP in exchange for its gift.  The deed explicitly stated that "[t]his Deed reflects the entire agreement of * * * [LP] and * * * [PHLF]" and that "[a]ny prior or simultaneous correspondence, understandings, agreements, and representations are null and void upon execution hereof, unless set out in this instrument."  The deed of easement thus negated the provision or receipt of any consideration not stated therein.

Apart from the charitable conveyance and the covenants attending the easement, the deed of easement contains only two references to "consideration."  The first is the granting provision's reference to "consideration of Ten Dollars ($10.00) * * * [and] other good and valuable consideration."  Neither party contends that PHLF actually furnished LP with any valuable goods or services in exchange for its gift.  Evaluating this clause in the context of the deed overall, we conclude that this clause constitutes "'boilerplate language and has no legal effect for purposes

[*12] of sec. 170(f)(8).'"  310 Retail, LLC, T.C. Memo. 2017-164, at *17 (quoting

RP Golf, LLC, 104 T.C.M. (CCH) at 416 n.7).[3]

The other reference to "consideration" in the deed of easement is the provision that required LP to pay PHLF a "one-time donation fee" of $93,500 "[i]n further consideration for the benefits to be received by * * * [LP] as a result of the granting of the Easement and the entering into of this Deed."  The deed states that this fee will "be used to endow periodic easement monitoring and related costs and support a * * * [PHLF] preservation easement defense fund."

It is unclear whether PHLF's monitoring activity should be regarded as constituting, within the meaning of section 170(f)(8)(B)(ii), the provision of a "service" in exchange for LP's gift.  By inspecting the building to ensure compliance with the easement restrictions, PHLF would be discharging its own enforcement responsibilities as a charitable organization holding conservation easements.  Its monitoring would be an odd form of "service" because it could generate no upside for LP but only downside.  If the monitoring disclosed a violation, the deed authorized PHLF to seek an injunction requiring LP to restore the property to the

_____

[3]We find no legally significant distinction between the boilerplate language of the granting provision in the instant case (which recited receipt of "Ten Dollars ($10.00) * * * and other good and valuable consideration"), in 310 Retail, LLC (which recited receipt of "One Dollar ($1.00) and * * * other good and valuable consideration"), and in RP Golf, LLC (which recited receipt of "other good and valuable consideration" without mentioning a nominal dollar amount).

[*13] status quo ante and to demand reimbursement for any costs thus incurred. And because the easements held by PHLF are its property, any contribution to an "easement defense fund" would seem to benefit it rather than its donors.

In any event, section 170(f)(8) does not prohibit a charity from providing services to a donor. Rather, it requires the charity to provide the donor with a "description and good faith estimate of the value" of any services supplied in exchange for the gift. Sec. 170(f)(8)(B)(iii). In the deed of easement PHLF charged LP a fee of $93,500 and adequately described the "services" for which this fee was being paid. We conclude that PHLF thereby supplied LP with a "description and good faith estimate" of the value of its monitoring activities.[4]

In sum, we conclude that the deed of easement constituted a valid CWA under our case law. It was properly executed by PHLF's president contemporaneously with the gift. To the extent that PHLF's monitoring activities constituted the rendering of "services" to LP, the deed of easement provided a "description and

_____

[4]Respondent contends that "the true value of the Monitoring Services cannot be gleaned from the four corners of the Easement Deed" and that the value "could be greater or less than * * * [LP's] $93,500 payment." PHLF agreed to inspect the premises at least once annually. While the present value of such future services could easily be less than $93,500, it is hard to imagine that it could be more. In any event, the statute requires only that the donee organization provide a "good faith estimate," and we conclude that it did so here. Although the deed of easement referred to the $93,500 as a "donation fee," LP did not claim a charitable contribution deduction for this cash payment on its Form 1065 for 2005.

**[*14]** good faith estimate of the value" of those services.  And because the deed of easement explicitly stated that it represented the parties' "entire agreement," it negated the receipt by LP of any other goods or services from PHLF.  We accordingly hold that the deed of easement constituted a CWA meeting all the requirements of section 170(f)(8)(B).

To reflect the foregoing,

<u>An appropriate order will be issued granting petitioner's motion for partial summary judgment and denying respondent's cross-motion for partial summary judgment</u>.