# United States Tax Court

T.C. Memo. 2026-49

WILLIAM P. WELLS AND RUTH E. WELLS,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 13104-24.                                    Filed June 10, 2026.

————

*Matthew Pollick Cavitch*, for petitioners.

*Christopher D. Bradley*, *David E. Coe*, *Emily A. Willis*, and *Donielle A. Holmon*, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: The Internal Revenue Service (IRS or respondent) issued a Notice of Deficiency (NOD) to petitioners, William P. Wells and Ruth E. Wells, disallowing the carryover charitable contribution deductions petitioners claimed for tax years 2019, 2020, and 2021 (tax years at issue) regarding a noncash charitable contribution of real property consisting of both land and structures in Claiborne County, Mississippi.

The issues for decision are whether (1) petitioners satisfied the requirements of section 170(f)(8)[1] for the charitable contribution they

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] made during tax year 2016 and (2) section 6662 penalties are applicable for the tax years at issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulations of Facts and the attached Exhibits are incorporated herein by this reference. Petitioners resided in Eads, Tennessee, when they timely petitioned this Court.[2]

I.    *Background*

French Camp Academy (FCA), a Christian boarding school that has been operating since 1885, is in the town of French Camp, Mississippi. In 1998 FCA took over Chamberlain-Hunt Academy (CHA), a military boarding school and nonprofit entity of the State of Mississippi. CHA is in Port Gibson, Mississippi, and consists of both land and structures in Claiborne County (Property). FCA owned the Property through Chamberlain Hunt Properties, LLC (CHP). Over a 14-year period FCA invested over $22 million relating to operational shortfalls for CHA and capital improvements to the Property. FCA determined that operating CHA was costly, and it was not acquiring the requisite number of students to fund it.

FCA made extensive efforts to sell the Property, including posting it on a publicly listed site and presenting it to the Mississippi State Government and Alcorn University. The only offer FCA received was from Chamberlain, LLC (Chamberlain). Mr. Wells and Bill Payne, a former FCA board member, each owned a 50% interest in Chamberlain. On July 23, 2013, FCA sold the Property by transferring all of its interest in its wholly owned entity CHP to Chamberlain for $200,000. After the transaction, CHA operated for another school year before closing its doors at the end of 2014.[3] The CHA board of directors at this time consisted of Tom Bowen, Jim Montgomery, and Mr. Wells.[4]

---

[2] Absent stipulation to the contrary, this case is thus appealable to the U.S. Court of Appeals for the Sixth Circuit. *See* I.R.C. § 7482(b)(1)(A), (2).

[3] In 2015 Jesse Lane, a real estate agent, listed the Property for approximately $5.5 million, but it did not sell.

[4] Tom Bowen resigned as a director sometime after December 30, 2016.

[*3] II.    *Donation of the Property*

On December 30, 2016, Chamberlain transferred the Property from CHP to CHA via quitclaim deed, which was notarized on December 30, 2016 (Quitclaim Deed). The Quitclaim Deed was recorded in Claiborne County on July 11, 2017. Mr. Wells drafted the Quitclaim Deed and signed it as manager of Chamberlain, the managing member of CHP. The Quitclaim Deed granted the Property in consideration for the sum of $1. It is unclear who physically filed the Quitclaim Deed with Claiborne County.

On December 30, 2016, Mr. Wells, on behalf of Chamberlain, signed and sent a letter addressed to Mr. Montgomery, as president of CHA (Donation Letter). The Donation Letter was drafted by Mr. Wells's accountant and return preparer, Dennis Long. At this time, Mr. Long had been Mr. Wells's accountant for 30 years, and he considered Mr. Long to be knowledgeable and reliable about tax law. The Donation Letter stated:

> On behalf of Chamberlain, LLC, sole owner of Chamberlain Hunt Properties, please accept our donation of the Chamberlain Hunt Academy Campus consisting of 104 acres of land and 110,622 square feet of buildings. This property is specifically described in detail in the Integra Realty Resources Appraisal, IRR – Jackson File No. 176-2016-0410, dated December 15, 2016. This donation is being made by Quitclaim Deed dated December 30, 2016, signed by me William P Wells, Manager, Chamberlain LLC, managing member of Grantor [CHP]. Per the above referenced appraisal, the value of the donation is $4,420,000. It is our sincere hope that this donation perpetuates Chamberlain Hunt Academy's operations.

On June 16, 2017, Mr. Long emailed Mr. Wells instructions for a contemporaneous letter that needed to be signed by Mr. Montgomery acknowledging the donation, and Mr. Long provided instructions for the appraiser regarding the Property. In addition, Mr. Long attached the instructions page for Form 8283, Noncash Charitable Contributions, regarding "Part IV, Donee Acknowledgement," and he hand wrote on the instructions page "for Chamberlain Hunt Academy."

On June 23, 2017, there was email correspondence between Mr. Long and Mr. Wells in which Mr. Long stated: "I still need one more

[*4] letter signed by Mr. Montgomery acknowledging the Donation. This was underlined in the instructions to him along with the Form 8283 he signed." In response, on June 26, 2017, Mr. Wells asked for clarification regarding the contemporaneous written acknowledgment (CWA) under section 170(f)(8) and Form 8283. Later that day Mr. Long responded, explaining:

> He just needs to write a letter on CHA letterhead acknowledging and thanking Chamberlain, LLC for the generous gift of the Campus property as of December 30, 2016. It would be really good if he says he understands that the Campus has a current appraised value of $4,420,000. That is all that it needs.

On that same day Mr. Wells emailed Mr. Montgomery, writing: "I need you to write a short note on CHA letterhead. I have drafted already. Let me know when you can come by or when you can do lunch." Mr. Montgomery replied on June 27, 2017, that he could "certainly sign what [he] need[ed] to sign today."

Mr. Montgomery, on CHA letterhead, handwrote and signed as president of CHA a letter addressed to Messrs. Wells and Payne (Acknowledgment Letter). The Acknowledgment Letter was undated and stated:

> Thank you for the generous gift of the campus property to Chamberlain Hunt Academy. This gift will be used to help the school attempt to achieve a mission of continuing to help students develop and come closer to the Lord in their faith. As noted, the value of the gift is $4.42 million.

III.  *Tax Reporting*

Mr. Wells signed CHA's Form 990, Return of Organization Exempt From Income Tax, identifying himself as president for the period ending May 31, 2016, and for the period ending May 31, 2017. CHA's board of directors for the tax period ending May 31, 2016, consisted of Messrs. Bowen, Montgomery, and Wells. CHA's board of directors for the tax period ending May 31, 2017, included Messrs. Montgomery and Wells.

On the 2016 Form 1065, U.S. Return of Partnership Income, Chamberlain claimed a deduction of $4.42 million for a noncash charitable contribution of the Property to CHA as of December 30, 2016.

**[\*5]** Chamberlain attached Form 8283 to its 2016 Form 1065, which included an attached appraisal prepared by John R. Praytor dated December 15, 2016, valuing the Property at $4.42 million. A proportionate share of the deduction flowed through Chamberlain to Mr. Wells in accordance with his partnership interest.

For tax year 2016 the Wellses reported a charitable contribution of $2.21 million on their joint Form 1040, U.S. Individual Income Tax Return, relating to the donation of the Property by Chamberlain. The Wellses carried forward this charitable contribution on their Forms 1040 for tax years 2019, 2020, and 2021, claiming deductions of $168,936, $620,192, and $374,561, respectively. Petitioners timely filed their Forms 1040 for the tax years at issue.

## IV.    *NOD*

On June 4, 2024, respondent issued an NOD for petitioners' 2019, 2020, and 2021 tax years regarding their Forms 1040. The NOD determined deficiencies of $45,458, $224,368, and $132,882 and accuracy-related penalties under section 6662 of $9,091.60, $44,873.60, and $26,576.40 for 2019, 2020, and 2021, respectively. The Form 886–A, Explanation of Items, disallowed the charitable contribution deduction carryovers from prior years related to the donation of the Property.[5] Petitioners timely filed their Petition on August 9, 2024, alleging that they received an 11-page NOD which failed to contain an explanation of how the deficiencies were calculated or the reason for the adjustments.[6] However, with the filing of his Answer, respondent attached a complete copy of the NOD.

## OPINION

## I.    *Burden of Proof*

The taxpayer generally bears the burden of proving the determinations set forth in an NOD are in error. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The burden of proof may shift to

---

[5] The parties filed a Stipulation of Settled Issues, Oct. 24, 2025, stipulating additional adjustments determined in the NOD, including "Sales of Raised Livestock, Produce, Etc." reported on Schedule F, Profit or Loss From Farming, and "Taxable Pensions and Annuities."

[6] The Petition included only the NOD cover letter, Form 4089, Notice of Deficiency Waiver, and a survey request form from the IRS Independent Office of Appeals (Appeals).

**[\*6]** the Commissioner if the taxpayer introduces credible evidence with respect to the issue and satisfies certain conditions. I.R.C. § 7491(a)(1) and (2). Petitioners allege that the burden shifts to respondent under Rule 142(a)(1) and under section 7491. After considering the issue, we do not find petitioners' arguments compelling.

First, under Rule 142(a)(1) petitioners contend that they received only an 11-page NOD which did not enclose additional statements explaining the deficiencies. In other words petitioners argue that since their NOD did not include an explanation as to the deficiency amounts, respondent is now trying to argue a "new matter." We disagree.

The burden of proof shifts to the Commissioner with respect to any "new matter" or "increase[] in deficiency." Rule 142(a)(1); *see Shea v. Commissioner*, 112 T.C. 183, 191 (1999); *Wayne Bolt & Nut Co. v. Commissioner*, 93 T.C. 500, 507 (1989); *Turner v. Commissioner*, 68 T.C. 48, 50 (1977).

The NOD offered by respondent with his Answer and later filed into evidence at trial contained a full explanation of the issues. Further, petitioners were fully aware of the issues and the determination made by Appeals. Petitioners stated in their Petition that the sole issue remaining in dispute was the 2016 noncash charitable contribution. Thus, there was no "new matter" arising after the issuance of the NOD.

Second, section 7491(a) provides that the burden of proof may shift to the Commissioner on a factual issue if, among other requirements, the taxpayer "introduces credible evidence with respect to [that] issue"; "complied with the requirements under this title to substantiate any item;" and "has maintained all records required under this title and has cooperated with reasonable requests by the [Commissioner] for witnesses, information, documents, meetings, and interviews." I.R.C. § 7491(a)(1) and (2).

Petitioners have not presented a factual dispute in which the burden of proof becomes controlling. Here the parties agree that the Court should consider petitioners' four documents for the CWA issue: the Donation Letter, the Quitclaim Deed, the Acknowledgment Letter, and the Form 8283. Thus, the question is whether under section 170 the facts of this case establish that the CWA requirements were met. Although the issue is a mixed question of fact and law, it is primarily a legal question. Consequently, the allocation of the burden of proof has no bearing on the legal issue of whether the CWA requirements were

**[\*7]** met. *See Barnes v. Commissioner*, T.C. Memo. 2012-80, 103 T.C.M. (CCH) 1424, 1429–30, *aff'd*, 712 F.3d 581 (D.C. Cir. 2013); *Harper v. Commissioner*, T.C. Memo. 2002-121, 83 T.C.M. (CCH) 1641, 1648; *see also Williams v. Commissioner*, 120 F. App'x 289, 293 (10th Cir. 2005), *aff'g* T.C. Memo. 2003-97.

Accordingly, we need not decide the section 7491(a) issue since "[i]n a case where the standard of proof is preponderance of the evidence and the preponderance of the evidence favors one party, we may decide the case on the weight of the evidence and not on an allocation of the burden of proof." *Knudsen v. Commissioner*, 131 T.C. 185, 189 (2008), *supplementing* T.C. Memo. 2007-340; *see Esgar Corp. v. Commissioner*, 744 F.3d 648, 653–54 (10th Cir. 2014), *aff'g* T.C. Memo. 2012-35 *and Tempel v. Commissioner*, 136 T.C. 341 (2011); *Geiger v. Commissioner*, 279 F. App'x 834, 835 (11th Cir. 2008), *aff'g* T.C. Memo. 2006-271. We discuss the burden of proof applicable to the accuracy-related penalties respondent determined against petitioners separately in connection with our discussion of those penalties.

II.    *Charitable Contributions*

Section 170(a)(1) allows taxpayers to deduct charitable contributions made within the taxable year. The term "charitable contribution" is defined in section 170(c). For contributions of property other than money, the deduction is generally equal to the property's fair market value (FMV) at the time of the contribution. Treas. Reg. § 1.170A-1(c)(1). A deduction is allowed for the value of charitable contributions only if verified under regulations prescribed by the Secretary. I.R.C. § 170(a)(1).

Section 170(f) sets forth a series of substantiation requirements that vary depending on the character and size of the taxpayer's charitable gift. Specifically section 170(f)(8)(A) provides that "[n]o deduction shall be allowed under subsection (a) for any contribution of $250 or more unless the taxpayer substantiates the contribution by a [CWA] of the contribution by the donee organization that meets the requirements of subparagraph (B)." Additional verification requirements including "a description of such property and such other information as the Secretary may require" are imposed for contributions of property with a claimed value exceeding $500, *see* I.R.C. § 170(f)(11)(B), while for contributions of more than $5,000 the additional and more rigorous "qualified appraisal" by a qualified appraiser is required, *see* I.R.C. § 170(f)(11)(C), (E).

**[\*8]**  For purposes of this Opinion respondent does not contest the existence of the alleged donation. Rather, he contends that no deduction is available, as a matter of law, because petitioners failed to satisfy the requirements of the CWA. Therefore, we consider those requirements in turn.

### III.  *CWA Requirements*

Section 170(f)(8)(B) requires that the CWA state (1) the amount of cash and a description (but not value) of any property other than cash contributed, (2) whether the charitable organization provided any goods or services in consideration, in whole or part, for the contributed property, and (3) a description and good-faith estimate of the value of any goods or services[7] the taxpayer received as consideration.[8] *Addis*, 118 T.C. at 533–34. Furthermore, the taxpayer must receive the CWA from the donee organization on or before the earlier of the date the taxpayer files his return or the due date for filing the return. I.R.C. § 170(f)(8)(C).

A taxpayer's failure to supply a satisfactory CWA bars a charitable contribution deduction. *Izen v. Commissioner*, 148 T.C. 71, 77 (2017), *aff'd per curiam*, 38 F.4th 459 (5th Cir. 2022); *15 W. 17th St. LLC v. Commissioner*, 147 T.C. 557, 562–63 (2016); *Albrecht v. Commissioner*, T.C. Memo. 2022-53, at \*3–4. The doctrine of substantial compliance does not apply in this context. *Izen*, 148 T.C. at 77; *15 W. 17th St.*, 147 T.C. at 562; *French*, T.C. Memo. 2016-53, at \*8; *see also Addis v. Commissioner*, 374 F.3d at 887 ("The deterrence value of [a] total denial of a deduction [in the case of an improper CWA] comports with the effective administration of a self-assessment and self-reporting system."). The CWA and other substantiation requirements of section 170 are designed to "foster disclosure of 'dual payment' or quid pro quo contributions." *Viralam v. Commissioner*, 136 T.C. 151, 171 (2011).

A CWA, however, need not take any specific form and may be furnished to the donor (for example) by letter, postcard, or computer-generated media. *French*, T.C. Memo. 2016-53, at \*7; *Schrimsher v.*

---

[7] "Goods or services include cash, property, services, benefits, and privileges." *Addis v. Commissioner*, 118 T.C. 528, 534 n.8 (2002), *aff'd*, 374 F.3d 881 (9th Cir. 2004); *see* Treas. Reg. § 1.170A-13(f)(5).

[8] "A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment." Treas. Reg. § 1.170A-13(f)(6).

**[\*9]** *Commissioner*, T.C. Memo. 2011-71, 101 T.C.M. (CCH) 1329, 1330 (citing legislative history). "If the donee organization provides no goods or services to the taxpayer in consideration of the taxpayer's contribution, the written substantiation must include a statement to that effect." *Irby v. Commissioner*, 139 T.C. 371, 387–88 (2012).

### A. *Parties' Arguments*

Petitioners argue that they satisfied the CWA requirements in several ways. First they argue, citing *Irby*, 139 T.C. 371, that the Donation Letter, the Quitclaim Deed, the Form 8283, and the Acknowledgment Letter should be read together, given that Mr. Wells was both the donor and the donee. Second, petitioners argue that the Donation Letter, the Quitclaim Deed, the Form 8283, and the Acknowledgment Letter repeatedly provide that the claimed deduction is exactly equal to the claimed value of the donation which shows that CHA provided no goods or services in consideration of the contribution made by Chamberlain.

Respondent contends Chamberlain failed to secure from CHA a CWA that satisfies section 170(f)(8). Respondent does not dispute that the Court may consider multiple documents in determining whether the CWA was obtained; however, he argues that the documents petitioners relied on contain no CWA from the donee, CHA. Further, respondent contends that the Quitclaim Deed does not specify whether CHA provided any goods or services, that CHA was not a party to and did not sign the Quitclaim Deed, and that the Quitclaim Deed does not state it represented the entire agreement between the parties.

### B. *Analysis*

This Court in *Irby*, 139 T.C. at 389, determined that "we have found no authority to indicate . . . that the [CWA] may not be made up of a series of documents. We thus find that, collectively, the documents [the taxpayer] provided constitute a [CWA]." *Irby* examined five documents and held that when taken together they constituted the CWA for a bargain sale transaction. *Id.* at 390. The five documents included an option agreement to purchase a conservation easement, IRS Form 8283, a letter from the donee, a settlement statement prepared by the title company listing the amounts paid as part of the bargain sale, and a deed of conservation. *Id.* at 388–89. However, unlike the documents in

**[\*10]** this case, each of the documents relied upon in *Irby* was acknowledged by the donee.[9] *Id.*

Accordingly, we can examine multiple documents to determine whether the CWA requirements are satisfied, but those documents must be acknowledged by the donee. *See* I.R.C. § 170(a)(1) (providing that a charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary); *Sklar v. Commissioner*, 125 T.C. 281, 295 (2005), *aff'd*, 549 F.3d 1252 (9th Cir. 2008); *Viralam*, 136 T.C. at 168 ("Section 170(f)(8)(B) requires that the donee organization state in the acknowledgment 'Whether the donee organization provided any goods or services in consideration, in whole or part, for' the contributed property or cash."); Treas. Reg. § 1.170A-13(f)(2) ("[A] written acknowledgement *from a donee organization* must provide the following information . . . ." (emphasis added)).

Here, the only documents acknowledged by CHA were the Acknowledgment Letter and Form 8283—both signed by Mr. Montgomery. The Donation Letter was created by Mr. Long and signed by Mr. Wells on behalf of Chamberlain. The Quitclaim Deed was both signed and created by Mr. Wells on behalf of Chamberlain, as managing member of CHP, and it remains unclear who filed the Quitclaim Deed.[10]

Petitioners argue that since Mr. Wells was on both sides of the transaction, the Quitclaim Deed and the Donation Letter should be read together with the other documents. Petitioners' argument fails under the Code as we find that petitioners are required under section 170(f)(8) to provide a CWA from the donee whether or not the donee and donor are on both sides of the transaction. "The essential statutory purpose of the [CWA] required by section 170(f)(8) is to assist taxpayers in determining the deductible amounts of their charitable contributions and to assist the [IRS] in processing tax returns on which charitable contribution deductions are claimed." *Durden v. Commissioner*, T.C. Memo. 2012-140, 103 T.C.M. (CCH) 1762, 1763; *see also Villareale v. Commissioner*, T.C. Memo. 2013-74, at \*5–6.

---

[9] The Commissioner in *Irby* argued that the settlement statements were not acknowledged by the donee since they were acknowledged by the Government of the United States; however, the Court rejected the argument and found that the "Government of the United States represents the donee's interest with respect to the acknowledgment." *Irby*, 139 T.C. at 389 n.14.

[10] Mr. Wells testified that he was unsure of who had filed the Quitclaim Deed.

**[\*11]** Furthermore, in *Simmons v. Commissioner*, T.C. Memo. 2009-208, 98 T.C.M. (CCH) 211, 215–16, *aff'd*, 646 F.3d 6 (D.C. Cir. 2011), the Court held that the conservation easement deeds satisfied the requirements of section 170(f)(8)(A) and (B) because they were signed by the representatives of the charity, were contemporaneous with the donation of the easements, and described the properties donated. We acknowledge that a deed itself may satisfy the CWA requirements of section 170(f)(8). *See, e.g.*, *Averyt v. Commissioner*, T.C. Memo. 2012-198, 104 T.C.M. (CCH) 65, 68–69. However, a deed that satisfied the CWA requirements must still be acknowledged by the donee. *See Big River Dev., L.P. v. Commissioner*, T.C. Memo. 2017-166, at \*10–11 ("The deed of easement in this case was properly executed by [the donee organization]'s president and recorded in the Allegheny County Department of Real Estate in January 2005."); *310 Retail, LLC v. Commissioner*, T.C. Memo. 2017-164, at \*12 ("[W]e held that a deed of easement may constitute a CWA provided that it is properly executed by the donee and is 'contemporaneous.'"); *RP Golf, LLC v. Commissioner*, T.C. Memo. 2012-282, at \*9 ("[T]he agreement in this case was signed by a representative of [the donee organization] . . . ."); *Averyt*, 104 T.C.M. (CCH) at 68 (determining that the conservation deed was signed by a representative of the donee organization). Here, petitioners ignore that the Quitclaim Deed was not acknowledged by CHA as it was signed by Mr. Wells in his capacity as manager of Chamberlain, the managing member of CHP. *See supra* note 10. Accordingly, in this case we cannot rely on the Quitclaim Deed itself for satisfaction of CWA.

The Acknowledgment Letter does thank CHP for the gift and states: "As noted, the value of the gift is $4.42 million." The Acknowledgment Letter, however, does not include a description of the Property nor state whether any goods or services were provided in the exchange. While Form 8283 would satisfy the description element of a CWA, it likewise does not contain a statement regarding whether the donee provided any goods or services. "Congress has required that a CWA must include a statement of '[w]hether the donee organization provided any goods or services in consideration' for the gift." *Cade v. Commissioner*, T.C. Memo. 2025-20, at \*9 (quoting I.R.C. § 170(f)(8)(B)). The documents petitioners rely upon as their CWA contain no statement to that effect; thus, they cannot serve as a CWA. *See id.*

Petitioners also argue that the claimed deduction is exactly equal to the claimed value of the donation, which shows that nothing else was paid in consideration. However, even if no additional consideration was provided beyond the claimed deduction, the CWA must say so in order

[*12] to satisfy the requirements of section 170(f)(8)(B)(ii). *See Brooks v. Commissioner*, T.C. Memo. 2022-122, at *12 ("Proving the facts that should have been included in the CWA cannot replace the strict substantiation requirements of section 170(f)(8)."), *aff'd*, 109 F.4th 205 (4th Cir. 2024); *Friedman v. Commissioner*, T.C. Memo. 2010-45, 99 T.C.M. (CCH) 1175, 1178; *Schrimsher*, 101 T.C.M. (CCH) at 1331. Accordingly, the Acknowledgment Letter and Form 8283 are not sufficient to satisfy the CWA requirements.

In sum, petitioners have not satisfied the requirements of section 170(f)(8), and their deductions claimed for the noncash charitable contribution must be disallowed as a matter of law. *See* I.R.C. § 170(f)(8)(A).

IV.    *Section 6662 Penalties*

Respondent seeks to impose the accuracy-related penalty for a substantial understatement of income tax under section 6662(d) and, in the alternative, a penalty for negligence or disregard of rules or regulations under section 6662(c). Respondent bears the burden of production with respect to section 6662(a) penalties and is required to present sufficient evidence showing that any penalty is appropriate. *See* I.R.C. § 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446−47 (2001). This includes showing compliance with the procedural requirements of section 6751(b)(1).[11] *See Graev v. Commissioner,* 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).

Section 6662(a) imposes a 20% accuracy-related penalty on an underpayment of tax required to be shown on a return. This penalty applies to underpayments attributable, among other reasons, to negligence or disregard of rules or regulations, and any substantial understatements of income tax. I.R.C. § 6662(b)(1) and (2). Section 6662(d)(2)(A) generally defines "understatement" as the excess of the tax required to be shown on the return over the amount shown on the return as filed. An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. *See* I.R.C. § 6662(d)(1)(A).

Negligence "includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return." Treas.

---

[11] The Court has ruled that respondent has complied with the procedural requirements of section 6751(b)(1). *See* Order, Oct. 7, 2025.

**[\*13]** Reg. § 1.6662-3(b)(1). Negligence also includes a taxpayer's failure to "keep adequate books and records or to substantiate items properly." *Id.* Disregard is defined as "any careless, reckless, or intentional disregard." I.R.C. § 6662(c).

Penalties will not be imposed, though, if any portion of the underpayment is attributable to a taxpayer's reasonable cause and good-faith attempt to comply with his tax obligations. *See* I.R.C. § 6664(c)(1). "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(b)(1). Petitioners bear the burden of proof regarding a reasonable cause defense. *See* Rule 142(a)(1); *Higbee*, 116 T.C. at 446–47 (holding that, in a situation such as here, the taxpayer bears the burden of proof with regard to issues of reasonable cause).

One possible ground for claiming "reasonable cause" is reliance on professional advice. Treas. Reg. § 1.6664-4(b). Reliance on the advice of a tax professional may establish a defense of reasonable cause and good faith, but only if (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. *See Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002). "Advice does not have to be in any particular form," but it must consist of a "communication . . . setting forth the analysis or conclusion of a person, other than the taxpayer, provided to (or for the benefit of) the taxpayer and on which the taxpayer relies." Treas. Reg. § 1.6664-4(c)(2); *see also id.* subpara. (1) (providing additional rules for reliance on the advice of others).

Petitioners acted reasonably by retaining Mr. Long to assist them with satisfying section 170 for their noncash charitable contribution. Mr. Long is a certified public accountant with education and work experience which makes him sufficiently competent to justify petitioners' reliance on his advice. Email correspondence between Mr. Long and Mr. Wells shows that Mr. Wells exercised diligence in procuring all records Mr. Long advised should be obtained, including an appraisal for Form 8283.

Lastly, petitioners relied in good faith on Mr. Long. Mr. Wells emailed Mr. Long seeking clarification on the CWA requirements. Mr. Long provided the Form 8283 instructions and a brief explanation

[*14] of what the CWA needed to contain. Mr. Wells's draft of the Acknowledgment Letter included everything Mr. Long stated it needed. Petitioners reasonably relied on Mr. Long's advice as he had been their tax accountant for some 30 years and they had no reason to question the advice he was providing. Under the facts herein, we find petitioners acted with reasonable cause and in good faith with respect to the underpayments and are not liable for the section 6662 penalties. *See Greenblatt v. Commissioner*, T.C. Memo. 2024-109, at *26−27.

V.      *Conclusion*

Since petitioners did not satisfy their CWA requirements under section 170(f)(8), we will sustain respondent's disallowance of petitioners' noncash charitable contribution carryovers for tax years 2019, 2020, and 2021. Since the CWA requirement is not met, we need not address the FMV of the Property in question. However, on the basis of petitioners' established reasonable cause defense, we will overrule respondent's imposition of penalties.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*